*Justin Stine v. Montgomery County, Maryland*, No. 578, September Term 2017. Opinion by Nazarian, J.

**WORKERS' COMPENSATION – AMOUNT AND PERIOD OF COMPENSATION – COMPUTATION OF AVERAGE WEEKLY WAGE – EVIDENCE – EXPERT TESTIMONY**

The circuit court did not err in excluding testimony from workers' compensation claimant's vocational expert. Expert testimony about wage increases the claimant might expect at some point in the future, after earning a bachelor's degree in nursing and passing the requisite licensing examinations, was not relevant to the computation of the claimant's average weekly wage under MD. CODE ANN., LABOR & EMPL. § 9-602(g), which applied to claimant because of his status as volunteer emergency medical technician for a fire department. The circuit court was not required to apply section 9-602(a)(3), which allows for consideration of wages a claimant may expect to earn in the future given his age and experience.

**WORKERS' COMPENSATION – AMOUNT AND PERIOD OF COMPENSATION – COMPUTATION OF AVERAGE WEEKLY WAGE**

The circuit court erred in holding that COMAR 14.09.03.06 compelled the Commission to calculate the average weekly wage based on average wages earned during a fourteen-week period. As this Court recently clarified in *Richard Beavers Constr. v. Wagstaff*, that regulation "does not purport to restrict the Commission in any manner from utilizing a different time period [than fourteen weeks] if the Commission deems it appropriate to do so." 236 Md. App. 1, 24–25 (2018) (quoting *Gross v. Sessinghause & Ostergaard, Inc.*, 331 Md. 37, 50 (1993)).

**WORKERS' COMPENSATION – AMOUNT AND PERIOD OF COMPENSATION – COMPUTATION OF AVERAGE WEEKLY WAGE – PROCEEDINGS TO SECURE COMPENSATION – REVIEW BY COURT – RIGHT TO TRIAL *DE NOVO* – RIGHT TO JURY TRIAL**

The circuit court erred in entering an order affirming the decision of the Workers' Compensation Commission that set the claimant's average weekly wage. The circuit court instead should have proceeded with a jury trial, which the claimant had requested pursuant to MD. CODE ANN., LABOR & EMPL. § 9-745(d). Judicial review in workers' compensation cases can follow one of two "modalities": an unadorned administrative appeal or an essential trial *de novo*. Where the claimant opted for an essential trial *de novo* and had requested a jury, the exclusion of his expert's testimony did not terminate his right to have a jury decide the factual question of his average weekly wage under MD. CODE ANN., LABOR & EMPL. § 9-602(g).

Circuit Court for Montgomery County
Case No. 423763

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 578

September Term, 2017

JUSTIN STINE

v.

MONTGOMERY COUNTY, MARYLAND

Meredith,
Nazarian,
Salmon, James P.
    (Senior Judge, Specially Assigned),

JJ.

Opinion by Nazarian, J.

Filed: June 1, 2018

Justin Stine, a volunteer emergency medical technician ("EMT") for Montgomery County (the "County"), injured his foot as he stepped off an ambulance while on duty. His injury required surgery, and he was unable to work for approximately two months. At the time of the injury, Mr. Stine was a university student studying nursing and had approximately two years left before he would earn his degree. He was also a part-time EMT for a private ambulance company, Lifestar, during the school year (when the injury occurred) and worked full-time during the summer. He filed a claim with the Maryland Workers' Compensation Commission ("Commission") for lost wages. The Commission held a hearing and found that Mr. Stine's average weekly wage is $64.65, the average of the wages he earned in the fourteen weeks preceding his injury.[1]

Mr. Stine appealed the Commission's determination of his average weekly wage to the Circuit Court for Montgomery County and requested a jury trial. On the day of trial, the court granted the County's motion *in limine* to exclude the testimony of Mr. Stine's vocational expert and the County's motion to strike the jury, then remanded the case to the Commission. We affirm the circuit court's decision to exclude the testimony of the vocational expert but reverse its decision to grant the County's motion to strike the jury and remand the case to the circuit court for additional proceedings consistent with this opinion.

---

[1] Mr. Stine was paid temporary total disability for the approximately two months he was unable to work.

## I.    BACKGROUND

Mr. Stine's injury occurred on March 26, 2016, and the hearing before the Commission took place on July 27, 2016. Mr. Stine testified, and both counsel presented arguments. Mr. Stine's counsel confirmed that the only issue before the Commission was the amount of Mr. Stine's average weekly wage.

There was very little in dispute factually. The parties agreed that the amount ultimately ordered by the Commission, $64.65, reflected the average amount Mr. Stine had earned from his job at Lifestar during the fourteen weeks preceding his injury, when he had been working part-time during the school year. In addition to the paystubs for the fourteen weeks preceding the accident, Mr. Stine had submitted three additional paystubs for full-time work during the summer of 2015. He also testified as to his hourly wage, and several raises he had received, since the time of the accident.[2] Although Mr. Stine did not argue that his summer earnings should factor into the calculation of his average weekly wage, the Commission inquired about them during the hearing.

Mr. Stine argued primarily that MD. CODE ANN., Labor & Empl. ("LE") § 9-602(a)(3) gave the Commission discretion to set Mr. Stine's average weekly wage higher than $64.65, the fourteen-week average.[3] The County argued that LE § 9-602(a) does not

---

[2] Mr. Stine's hourly wage was listed on the 2015 summer paystubs as $11.83. He testified during the hearing that at the time of the injury, he was earning $12.83 per hour and that at the time of the hearing, he was earning $13.83 per hour.

[3] This all matters, counsel argued in this Court, because although Mr. Stine was only out of work for two months, and although he had been authorized to return to work by the time the hearing occurred, the determination of his average weekly wage at this stage in the proceedings will establish his wage for any future workers' compensation benefits grounded in the same injury.

apply to his situation, and that LE § 9-602(g) applies instead. The Commission apparently adopted the fourteen-week average—it issued an order stating, without explanation, that "the claimant's average weekly wage is $64.65."

Mr. Stine filed a petition for judicial review in the circuit court and prayed a jury trial. In the meantime, Mr. Stine retained a vocational expert to support his argument that under LE § 9-602(a)(3), his average weekly wage should be based on what he likely would earn after finishing nursing school, working full-time as an EMT or nurse. Before trial, the County made an oral motion *in limine* to strike the testimony of Mr. Stine's vocational expert on the ground that LE § 9-602(a)(3) does not apply. The County also orally moved to strike the jury demand on the ground that the appropriate method for determining the average weekly wage is a legal question, and is therefore not suitable for jury review. Mr. Stine responded that LE § 9-602(a)(3) does apply and that his expert's testimony was admissible. And he argued as well that the average of his wages over the fifty-two weeks preceding his injury should have been used to calculate his average weekly wage, not just the fourteen weeks, and that that question should be submitted to the jury.

The court granted both of the County's motions. The court ruled that LE § 9-602(a)(3) did not apply, that § 9-602(g) applied instead, and that the vocational expert's testimony would be irrelevant. The court went on to find that Code of Maryland Regulations ("COMAR") 14.09.03.06 required the Commission to compute the average weekly wage from Mr. Stine's average wage over the fourteen-week period preceding the injury, leaving no issue of fact for the jury to decide. In the alternative, the circuit court held that even if COMAR 14.09.03.06 did not compel the Commission to use the fourteen-

3

week average, it nevertheless fell within the Commission's discretion to decline to consider Mr. Stine's average wages over a fifty-two-week period. The court entered an order affirming the Commission's order and remanding the case to the Commission. We supply additional facts as necessary below.

## II.    DISCUSSION

On appeal, Mr. Stine raises two questions that we have rephrased: *first*, whether the circuit court erred in granting the County's motion *in limine* to exclude testimony from Mr. Stine's vocational expert; and *second*, whether the circuit court erred in granting the County's motion to strike the jury and affirming the Commission's order setting Mr. Stine's average weekly wage at $64.65, the average of his wages over the fourteen weeks preceding the injury.[4] Before delving into the specifics of the parties' arguments,

---

[4] Mr. Stine stated the Questions Presented in his brief as follows:

> 1.    Whether the trial court erred in granting the County's Motion *in Limine* to Exclude Mr. Stine's Vocational Expert's Testimony, specifically that due to his age and experience Mr. Stine's wages were "expected to increase" in accordance with Lab. & Employ. Art. 9-602(a)(3), which states: *"[i]f the covered employee establishes that, because of the age and experience of the covered employee at the time of the accidental personal injury…the wages of the covered employee could be expected to increase under normal circumstances, the expected increase may be taken into account when computing the average weekly wage."*
>
> 2.    Whether the trial court erred in ruling that the Commission and the Court were restricted, pursuant to COMAR 14.09.03.06, to utilizing only a fourteen (14) week period in calculating Mr. Stine's Average Weekly Wage, given; [sic] i) that COMAR .06 deals only with the initial wage statement that an Employer must file with the Commission, not with how the fact finder determines the average weekly wage;

4

though, we outline the procedural path that appeals take in workers' compensation cases, as well as the standard of review.

Judicial review of the Commission's decisions in the circuit court is governed by LE § 9-745, which, unlike most other judicial review of administrative agency decisions, authorizes essentially a do-over of the agency decision and an opportunity for a jury trial:

> (c) The court shall determine whether the Commission:
>
> . . .
>
> (2) exceeded the powers granted to it under this title; or
>
> (3) misconstrued the law and facts applicable in the case decided.
>
> (d) On a motion of any party filed with the clerk of the court in accordance with the practice in civil cases, the court shall submit to a jury any question of fact involved in the case.
>
> (e)(1) If the court determines that the Commission acted within its powers and correctly construed the law and facts, the court shall confirm the decision of the Commission.
>
> (2) If the court determines that the Commission did not act within its powers or did not correctly construe the law and

---

> ii) Sec. 9-602(a)(3)'s clear language allowing for consideration beyond the fourteen (14) weeks; iii) the changes in the language in COMAR since the appellate courts have addressed this issue; iv) the Court of Appeal's [sic] decision in *Gross v. Sessinghause & Ostergaard, Inc.*, and; [sic] v) the social purpose of the Workers' Compensation Act for people seriously injured, such as Mr. Stine.

The County rephrased the Questions Presented in its brief:

> Did the trial court err in precluding Appellant's expert testimony?
>
> Did the trial court err in finding that COMAR 14.09.03.09 mandates a 14-week period for calculating average weekly wage and in not considering an average weekly wage calculation based on a 52-week period?

5

facts, the court shall reverse or modify the decision or remand the case to the Commission for further proceedings.

An appeal from the Commission to the circuit court "may follow two alternative modalities." *Simmons v. Comfort Suites Hotel*, 185 Md. App. 203, 224 (2009) (quoting *Bd. of Educ. for Montgomery Cty. v. Spradlin*, 161 Md. App. 155, 166 (2005)). The first is an "unadorned administrative appeal," *Spradlin*, 161 Md. App. at 167, under LE § 9-745(c) and (e). Had Mr. Stine taken that path, we would have before us a typical administrative agency appeal, and we would look through the circuit court judgment to review the decision of the Commission. *Elms v. Renewal by Anderson*, 439 Md. 381, 392 (2014); *see also Spradlin*, 161 Md. App. at 173.

Instead, Mr. Stine followed the second "modality," an "administrative appeal plus" authorized by LE § 9-745(d). *Spradlin*, 161 Md. App. at 171. It is an "essential trial *de novo*," in which the party challenging the Commission's decision may introduce new evidence in the circuit court so long as it relates to "a factual issue that was actually decided by the Commission." *Id.* at 177; *see also id.* at 171–72. The difference between an essential trial *de novo* and a true trial *de novo* stems from LE § 9-745(b), which provides that the Commission's decision is presumed to be correct and that the party challenging the decision has the burden of proof. *S.B. Thomas, Inc. v. Thompson*, 114 Md. App. 357, 366 (1997); *see also Baltimore Cty. v. Kelly*, 391 Md. 64, 74–75 (2006) (discussing how the burdens of proof and persuasion switch to the employer at the circuit court level when the employer (as opposed to the claimant) appeals the Commission's decision). In such cases,

6

as here, we review the decision of the circuit court. *McLaughlin v. Gill Simpson Elec.*, 206 Md. App. 242, 252–53 (2012).

### A. The Circuit Court Did Not Err In Excluding The Proffered Testimony Of Mr. Stine's Vocational Expert.

Mr. Stine argues *first* that the circuit court erred in excluding the proffered testimony of his vocational expert. Generally speaking, we review the trial court's decision to admit or exclude evidence for abuse of discretion. *Gasper v. Ruffin Hotel Corp. of Md., Inc.*, 183 Md. App. 211, 224 (2008). In this case, though, the circuit court's decision to exclude the expert's testimony ultimately depended upon a question of law, namely whether LE § 9-602(a)(3) governs the average weekly wage of a volunteer EMT. We review the circuit court's legal decisions *de novo*. *Richard Beavers Constr., Inc. v. Wagstaff*, 236 Md. App. 1, 13 (2018).

We "examin[e] the ordinary meaning of the enacted language, reading the statute as a whole to avoid an interpretation that might nullify another part of the statute." *Id.* at 14 (citing *Reger v. Washington Cty. Bd. of Educ.*, 455 Md. 68, 96 (2017)). "If the statutory language is sufficiently clear, the interpreter normally will have no need to look beyond the statute itself." *Id.* We construe the Workers' Compensation Act "to carry out its general purpose." *Id.* (quoting LE § 9-102(a)), *i.e.*, "to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment." *Id.* at 14–15 (cleaned up). "[W]here the meaning of the Act is unclear, the interpreter should resolve any uncertainty in favor of the claimant," although the statute's

plain meaning should not be ignored, nor should ambiguity be created where none exists "simply to allow an injured worker to prevail." *Id.* at 15 (cleaned up).

Section 9-602 of the Labor and Employment Article is divided into several subsections. The first, subsection (a), addresses computation of average weekly wage "[e]xcept as otherwise provided" in the remainder of LE § 9-602. The other subsections, from (b) to (l), address computation of the average weekly wage of different types of claimants, from handicapped students to prisoners to jurors. LE § 9-602(d), (h), and (k). Mr. Stine is a volunteer EMT. The County argues that LE § 9-602(a) does not apply at all because § 9-602 has a subsection that specifically applies to volunteer EMT's, namely subsection (g). Mr. Stine does not dispute that LE § 9-602(g) applies, but argues that his average weekly wage nevertheless should be calculated under LE § 9-602(a)(3), which, he asserts, would allow for a finding of a higher average weekly wage.

We begin with (a), the general computation subsection, and work our way through it:

> (a) (1) ***Except as otherwise provided in this section, the average weekly wage of a covered employee shall be computed*** by determining the average of the weekly wages of the covered employee:
>
> (i) when the covered employee is working full time; and
>
> (ii) at the time of:
>
> 1. the accidental personal injury . . . .
>
> (3) If a covered employee establishes that, because of the age and experience of the covered employee at the time of the accidental personal injury or last injurious exposure to the hazards of the occupational disease, the wages of the covered employee could be expected to increase under normal circumstances, the expected increase may be taken into

8

account when computing the average weekly wage of the covered employee under paragraph (1) of this subsection.

LE § 9-602(a) (emphasis added). Because Mr. Stine was an EMT, though, he is "otherwise provided," so we skip (a) and move down to subsection (g), which provides in relevant part:

> (g) *[F]or the purpose of computing the average weekly wage* of an individual who is a covered employee under § 9-234 of this title, *the wages of the covered employee shall be*: (i) for a covered employee who received a salary or wages from other employment at the time of the accidental personal injury . . . the salary or wages from the other employment . . . .

(emphasis added). As noted above, the parties do not dispute that Mr. Stine is "an individual who is a covered employee under LE § 9-234" by virtue of his status as a volunteer EMT.[5]

Subsection (g), along with every other subsection in LE § 9-602, does *not* contain any language referring back to the computation method or principles outlined in (a). Moreover, all of the other subsections of § 9-602, including (g), contain the phrase "the wages of the covered employee shall be," and all of them, save one, contain the language "for the purpose of computing the average weekly wage."[6] The presence of those phrases

---

[5] LE § 9-234 addresses when a member of a volunteer advanced life support unit, ambulance company, fire department, rescue company, or fire police unit is a "covered employee."

[6] The one subsection that does not contain the "for the purpose of computing" language—LE § 9-602(l)—does not change the analysis. In substance, subsection (l) is like the others in that it contains detailed instructions for determining the average weekly wage in a particular circumstance, namely, cases in which the employee has two or more jobs and is seriously injured while working at the job that does not provide the primary source of income.

reinforces that the average weekly wage calculation for employees covered by other subsections does not point the Commission back to subsection (a).

It follows, then, that the circuit court did not err in excluding testimony from Mr. Stine's vocational expert. Mr. Stine offered the expert to testify about the increases in salary he might have expected over time, testimony that might have been relevant to the subsection (a)(3) analysis (increases he might expect given his age and experience), but wasn't relevant to the subsection (g) question (wages he lost from his other employment). In so holding, we do not intend to foreclose the possibility that it may be appropriate in some instances for the Commission, in its *discretion*, to follow the general principles of subsection (a) in calculating the respective amounts under the other subsections of LE § 9-602, even if, as a matter of strict statutory interpretation, it is not *required* to apply them. For example, it is doubtful that in computing average weekly wage under subsection (g), the Commission would stray from subsection (a)'s requirement that it is the wage *at the time of the injury* that should be used, or that tips should be included computing in the wages for volunteer EMTs or firefighters who happen to earn a living on the side as restaurant servers. *See* LE § 9-602(a)(2)(i). On these facts, though, the circuit court followed the correct statutory path and did not abuse its discretion in excluding Mr. Stine's proffered expert testimony.

## B. The Circuit Court Erred In Granting The County's Motion To Strike The Jury.

*Second*, Mr. Stine argues that the circuit court erred in not allowing his case to proceed to a jury trial for a fresh determination of his average weekly wage. The circuit

court granted the County's motion to strike the jury because, as the court read it, COMAR 14.09.03.06 *required* the average weekly wage to be computed from the average of the covered employee's wages during the fourteen-week period preceding his injury. In the alternative, the circuit court determined that even if COMAR 14.09.03.06 did not impose such a requirement, there was no issue of fact for the jury to decide because the Commission had the discretion not to use the average of Mr. Stine's wages over a fifty-two-week period.

The circuit court erred in two respects. *First*, we disagree that COMAR 14.09.03.06 compelled the Commission to calculate the average weekly wage from a fourteen-week sample. As we recently clarified in *Wagstaff* (which was decided after the circuit court's decision), that regulation "does not purport to restrict the Commission in any manner from utilizing a different time period [than fourteen weeks] if the Commission deems it appropriate to do so." 236 Md. App. at 24–25 (quoting *Gross v. Sessinghause & Ostergaard, Inc.*, 331 Md. 37, 50 (1993)). And indeed, the regulation contains nothing requiring the fourteen-week time period in all cases. The only reference to a fourteen-week period appears in COMAR 14.09.03.06(B), which requires the employer or its insurer to file a wage statement as part of the initial proceedings before the Commission.[7] That

---

[7] COMAR 14.09.03.06 provides in relevant part:

> A. Preliminary Determination. For the purpose of making an initial award of compensation before a hearing in the matter, the Commission shall determine the claimant's average weekly wage from gross wages, including overtime, reported by the claimant on the employee's claim form.

11

statement must include the "average wage earned by the claimant during the 14 weeks before the accident," COMAR 14.09.03.06(B), and it appears that in practice, the Commission generally makes its initial determination of average weekly wage based on the average wages earned during that timeframe. *See* 1 CLIFFORD B. SOBIN, MARYLAND WORKERS' COMPENSATION § 11:2 at 279 (2017); THEODORE B. CORNBLATT, WORKERS'

---

B. Filing of Wage Statement. As soon as practicable, the employer/insurer shall file a wage statement containing the following information:

(1) The average wage earned by the claimant during the 14 weeks before the accident, excluding the time between the end of the last pay period and the date of injury, provided that periods of involuntary layoff or involuntary authorized absences are not included in the 14 weeks;

(2) Those weeks the claimant actually worked during the 14 weeks before the accident;

(3) Vacation wages paid; and

(4) Those items set forth in Labor and Employment Article, §9-602(a)(2), Annotated Code of Maryland.

C. Determination at First Hearing.

(1) Calculation of the average weekly wage shall be adjudicated and determined at the first hearing before the Commission.

(2) All parties shall be prepared to produce evidence from which the Commission can determine an accurate average weekly wage at the first hearing.

(3) If the Commission determines that an inaccurate average weekly wage resulted in the overpayment or underpayment of benefits, the Commission may order:

(a) A credit against future permanent disability benefits;

(b) The payment of additional compensation; or

(c) Any other relief the Commission determines is appropriate under the circumstances. . . .

COMPENSATION MANUAL at Chapter 1, section VII.B., 18th ed. (The Maryland State Bar

Assoc., Inc., 2017). But the regulation does *not* restrict the determination of average weekly

wage to that time period, and allows the Commission to consider other evidence in setting

the average weekly wage at a hearing, if one is held. COMAR 14.09.03.06(C);

*see Wagstaff*, 236 Md. App. at 24–25.

Second, the circuit court erred in granting the County's motion to strike the jury and

then entering an order affirming the Commission's decision without going forward with

the trial. Again, judicial review in workers' compensation cases is unusual because the

parties have two options: an unadorned administrative appeal or an essential trial *de novo*.

*S.B. Thomas*, 114 Md. App. at 366–67 (recognizing the right to an "essential trial *de novo*"

before the circuit court, which gives the challenger "the opportunity for a *de novo* factual

determination"). In his petition for judicial review, Mr. Stine opted for an essential trial *de

novo*, and the exclusion of his expert's testimony under LE § 9-602(a)(3) did not terminate

his right to have a jury decide the factual question of his average weekly wage under LE

§ 9-602(g). The circuit court phrased its ruling as if it were deciding a summary judgment

motion or a motion for judgment:

> So, under any theory, whether it's a trial or a summary
> judgment my ruling would be the same that is the Commission
> acted properly, legally, not arbitrarily, not capriciously, and
> there was no abuse of discretion, even if they had that
> discretion, but it was a well-argued case, and it's an interesting
> area of the law.

But there was no motion for summary judgment or motion for judgment before the circuit

court at the time of this ruling. Mr. Stine had filed his petition for judicial review, then a

request for a jury trial, which transformed the procedural posture of the case to an essential trial *de novo*, which means that the Commission's decision was not subject to review by the circuit court. For that reason, we reverse the circuit court's grant of the County's motion to strike and remand to the circuit court for additional proceedings consistent with this opinion.

> **JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY.**