*In the Matter of Bernard L. Collins*, No. 49, September Term, 2019. Opinion by Biran, J.

**MARYLAND WORKERS' COMPENSATION ACT – SETTLEMENT AND RELEASE – DEPENDENT'S CLAIM FOR DEATH BENEFITS -** The Court of Appeals held that, under the Maryland Workers' Compensation Act (the "Act"), Md. Code Ann., Lab. & Empl. ("LE") § 9-722(a) (LexisNexis 1991, 2016 Repl. Vol.), a dependent of a covered employee may settle the dependent's future claim for death benefits under the Act while the employee is still living. An employee does not have the power to release his or her dependents' independent claims for death benefits. Rather, a dependent must be a party to any settlement agreement that purports to release the dependent's claim for death benefits in order for the release to be enforceable against the dependent. *Id.* § 9-722(d)(1). The State Workers' Compensation Commission's approval of a settlement agreement that purports to release dependents' future claims for death benefits does not render the release enforceable against a dependent who is not a party to the agreement.

The Court of Appeals also held that an employee's settlement of the employee's claims for benefits related to an accidental personal injury or occupational disease does not extinguish his or her surviving dependents' claims for death benefits. A dependent's claim for death benefits under the Act, although based on an employee's compensable injury or disease, is independent of the employee's claim for benefits. The Act does not include any language suggesting that the employee must not have settled his or her claim for benefits relating to a compensable injury or disease in order for a dependent to retain a viable claim for death benefits based on the same injury or disease. Reading such a requirement into the Act would be inconsistent with the requirement that the Act be construed as liberally as possible in favor of employees and their families to effectuate the Act's benevolent purposes.

Circuit Court for Calvert County
Case No. C-04-CV-17-000175
Argued: February 10, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 49

September Term, 2019

_____

IN THE MATTER OF BERNARD L. COLLINS

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by Biran, J.

_____

Filed: May 26, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

A fundamental premise of the law of contracts is that a person who is not a party to a contract is not bound to its terms. *See, e.g.*, *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."). This case tests that proposition in the context of an employee's settlement of claims under the Maryland Workers' Compensation Act (the "Act"), Md. Code Ann., Lab. & Empl. ("LE"), Title 9 (LexisNexis 1991, 2016 Repl. Vol.).

Respondent Peggy Collins, the widow of firefighter Bernard Collins, filed a dependent's claim for death benefits under the Act against her late husband's former employer, the Huntingtown Volunteer Fire Department (the "Department"), and its insurers, Chesapeake Employers' Insurance Company ("Chesapeake") and Selective Insurance Company of America ("Selective"), who collectively are the Petitioners in this case. Mrs. Collins claimed that her husband's death was due to heart disease he had developed while working as a firefighter for the Department.

Two years before he died, Mr. Collins settled claims he had brought under the Act against Petitioners for disability benefits related to his heart disease. In the parties' settlement agreement, Mr. Collins purported to release Petitioners from any and all claims that Mr. Collins, his personal representative, dependents, spouse, children, and other potential beneficiaries might then or could later have "of whatsoever kind" which might arise under the Act from Mr. Collins's disability. In exchange for Mr. Collins's release, Petitioners agreed to make various payments to Mr. Collins upon approval of the settlement agreement by the State Workers' Compensation Commission (the "Commission").

Mr. Collins and Petitioners submitted their signed settlement agreement to the Commission for its review and approval. The Commission subsequently issued an order approving the parties' settlement, and Petitioners made the agreed-upon payments to Mr. Collins. Mrs. Collins was not a party to Mr. Collins's settlement with Petitioners.

After Mrs. Collins filed her claim for benefits based on Mr. Collins's death from heart disease, Petitioners contested Mrs. Collins's claim before the Commission, contending that Mr. Collins's prior release of claims bars Mrs. Collins from recovering death benefits. The Commission agreed with Petitioners and denied Mrs. Collins's claim. On Mrs. Collins's petition for judicial review, the Circuit Court for Calvert County granted summary judgment in favor of Petitioners based on release, thereby upholding the denial of Mrs. Collins's claim.

Mrs. Collins then appealed to the Court of Special Appeals, which reversed the circuit court's judgment and remanded the case to the Commission for further proceedings on Mrs. Collins's claim. The intermediate appellate court held that Mr. Collins's release does not bar Mrs. Collins's claim for death benefits because: (1) Mrs. Collins was not a party to the settlement; and (2) an employee's settlement of claims for disability benefits relating to an accidental injury or occupational disease does not extinguish the independent claim for death benefits that a surviving dependent may bring if the employee dies of the same compensable injury or disease.

For the reasons discussed below, we agree with the Court of Special Appeals that the release Mr. Collins provided in settlement of his workers' compensation claims does not bar Mrs. Collins from asserting her independent claim for death benefits under the Act.

2

# I

## Background

### A. Mr. Collins's Workers' Compensation Claim

Bernard Collins was born in October 1944. Peggy and Bernard Collins married in 1965. They remained married for the rest of Mr. Collins's life.

Mr. Collins worked for many years as a firefighter for the Department. At some point during his employment, Mr. Collins developed heart disease and hypertension. Under the Act, a paid firefighter's death or disability resulting from heart disease or hypertension is presumed to be compensable. LE § 9-503(a).

On February 13, 2012, Mr. Collins filed a workers' compensation claim with the Commission, alleging that he had developed heart disease and hypertension caused by his work for the Department. Mr. Collins's claim was assigned claim number B760589. In his claim, Mr. Collins listed his date of disablement as May 6, 2011 and his gross wages per week as $1,800.

Chesapeake was the Department's insurer as of May 6, 2011. Chesapeake successfully impleaded Selective into the case, based on Chesapeake's contention that Mr. Collins's actual date of disablement was December 12, 1998, when Mr. Collins underwent surgery for an aortic aneurysm. Selective was the Department's insurer as of December 12, 1998.

Petitioners contested Mr. Collins's claim, contending, among other things, that Mr. Collins's heart disease and hypertension did not arise from his employment. On February 25, 2014, Mr. Collins, his counsel, and counsel for Petitioners appeared before the

3

Commission for an evidentiary hearing. On March 19, 2014, the Commission found that Mr. Collins had sustained an occupational disease (heart disease and hypertension), arising out of and in the course of his employment as a firefighter. The Commission also found that Mr. Collins's first date of disablement was May 6, 2011, and that as a result of his occupational disease, Mr. Collins was temporarily totally disabled on May 6, 2011, and from July 7, 2011 to July 24, 2011. The Commission subsequently determined that Mr. Collins's average weekly wage at the time of disablement was $152.50.

The parties filed cross-petitions for judicial review of the Commission's decision in the Circuit Court for Calvert County. On February 19, 2015, the circuit court granted Mr. Collins's motion for partial summary judgment on the issue of average weekly wage, concluding that the correct average weekly wage was $526.87.

Before the remaining issues in the petitions for judicial review were resolved, Mr. Collins and Petitioners decided to settle Mr. Collins's claims, and the parties filed a stipulation of dismissal in the circuit court. As a result, on March 13, 2015, the circuit court dismissed the case and remanded it to the Commission.

On May 14, 2015, Mr. Collins and Petitioners entered into an "Agreement of Final Compromise and Settlement" (the "Agreement"), which Petitioners had drafted. After reciting that Mr. Collins claimed to be disabled as a result of work-related heart disease/hypertension, the parties agreed that: (1) Mr. Collins's average weekly wage as of his date of disablement was $526.87; and (2) upon approval of the Agreement by the Commission, Selective would pay Mr. Collins a lump sum of $100,000; Chesapeake would pay Mr. Collins a lump sum of $50,000; and Chesapeake also would fund a "Medicare Set

4

Aside" annuity in the amount of $47,192, by way of an initial payment of $9,438.08, followed by annual payments of $4,194.88 for nine years during Mr. Collins's lifetime.

For his part, Mr. Collins (as the "Claimant") agreed to release Petitioners from further liability and claims in paragraph 11 of the Agreement (the "Release"):

> The Claimant hereby accepts this Agreement and the aforesaid payment(s) in final compromise and settlement of any and all Claims which the Claimant, his personal representative, dependents, spouse and children or any other parties who might become beneficiaries under the Workers' Compensation Law, might now or could hereafter have under the provision of the said Law, arising out of the aforesaid injury or disablement or the disability resulting therefrom, and does hereby, on behalf of himself and all of said other parties, release and forever discharge the Employer, Chesapeake and Selective, their personal representative, heirs, successors and assigns, from all other claims of whatsoever kind which might or could hereafter arise under the Law from the said injury, disablement or disability.

The Agreement was signed by Mr. Collins, Mr. Collins's attorney, and attorneys for Petitioners. Mrs. Collins was not a party to the Agreement. Nor did the Agreement allocate or describe any portion of the payments to be provided by Petitioners as consideration for the release of a potential claim for death benefits under the Act.

The parties filed the Agreement with the Commission on May 19, 2015. At the same time, Mr. Collins also provided the Commission with a "Claimant's Affidavit in Support of Settlement" and other required documentation. In his Claimant's Affidavit, which Mr. Collins provided on the Commission's standard form, and which is required to be submitted for all settlements of claims under the Act, Mr. Collins recited: "I, Bernard Collins, am the claimant in claim # B760589. I ask the Workers' Compensation Commission to approve the settlement of my claim…." Mr. Collins further stated, among other things: "I am voluntarily settling my claim." Mr. Collins also acknowledged that, in

5

settling his claim, he was "giving up" various rights, including the right to vocational rehabilitation services, the right to payment during his lifetime for any medical treatment related to his claim (except as otherwise provided in the Agreement), and the right to seek to reopen his claim if his condition worsened. Mr. Collins did not include Mrs. Collins's right to file a claim for death benefits, if he were to die as a result of his occupational disease, in his recitation of the rights he was waiving as part of his settlement with Petitioners.

On June 4, 2015, the Commission approved the Agreement. Petitioners subsequently made the agreed-upon payments to Mr. Collins.

### B. Mrs. Collins's Claim for Death Benefits

On June 8, 2017, Mr. Collins died from cardiac arrest. On July 17, 2017, Mrs. Collins filed a "Dependent's Claim for Death Benefits" with the Commission. Mrs. Collins's claim was assigned claim number B829290. On the claim form, Mrs. Collins listed Mr. Collins's "Date of Injury" as May 6, 2011, his average weekly wage as $1,800, and his "Cause of Injury or Disease" as "Heart Disease – Cardiac Arrest, Cardiomyopathy." Mrs. Collins also claimed that, as of May 6, 2011, she did not have any average weekly wage, thereby indicating that she was wholly dependent upon Mr. Collins on the date of his disablement.

Petitioners contested Mrs. Collins's claim, asserting that the Release bars Mrs. Collins from receiving death benefits under the Act. Petitioners also contested Mr. Collins's date of disablement, his average weekly wage, and whether Mrs. Collins was dependent upon Mr. Collins when he became disabled.

6

The Commission held a hearing on Mrs. Collins's claim on September 7, 2017, at which the parties presented their arguments concerning the effect of the Release on Mrs. Collins's claim. Commissioner Kathleen A. Evans sat as the Commission at the hearing. Commissioner Evans did not make any findings of fact at the hearing, nor did she announce any conclusions of law.

On September 25, 2017, the Commission issued a one-page order denying Mrs. Collins's claim for death benefits. After listing the issues in dispute among the parties, the order stated: "The Commission finds … that there is [no] right to survivorship/death benefits in the above entitled claim; and therefore in light of the decision as to [this] issue, the remaining issues are not applicable."

Mrs. Collins filed a petition for judicial review in the Circuit Court for Calvert County and prayed a jury trial. The parties subsequently filed cross-motions for summary judgment. On May 1, 2018, following a hearing, the circuit court issued an opinion and order holding that the Release bars Mrs. Collins's claim for death benefits. The circuit court found that the language of the Release clearly and unambiguously evinces Mr. Collins's intent, in exchange for the agreed-upon payments by Petitioners, to bar any claim for death benefits that Mrs. Collins otherwise might one day be able to assert against Petitioners arising from Mr. Collins's heart disease. The court then held that the Release is enforceable against Mrs. Collins because the Commission reviewed and approved the Agreement after Mr. Collins and Petitioners submitted it to the Commission in 2015.

Mrs. Collins appealed to the Court of Special Appeals, which reversed the circuit court. *In the Matter of Collins*, 242 Md. App. 188 (2019). The Court of Special Appeals

7

concluded that Mr. Collins did not have the power unilaterally to release Mrs. Collins's claim for death benefits when settling his case. *Id.* at 204-07. In addition, the Court of Special Appeals held that the Release is not enforceable against Mrs. Collins because she was not a party to the Agreement, and Mr. Collins's settlement of his claim for disability benefits did not extinguish Mrs. Collins's inchoate claim for death benefits based on the same compensable disease. *Id.* at 207-10. Finally, the intermediate appellate court disagreed with the circuit court's reading of the Release, concluding that the absence of a specific reference to death benefits claims "evinces that the parties did not intend the Release to extend to those claims." *Id.* at 211-12. The Court of Special Appeals ordered the case remanded to the circuit court with instructions to enter judgment in favor of Mrs. Collins, and to remand the case to the Commission for further proceedings on Mrs. Collins's claim.

Petitioners filed a petition for a writ of *certiorari*, asking this Court to decide whether the Release operates to bar Mrs. Collins's claim for death benefits under the Act. On October 9, 2019, we granted the petition. 466 Md. 215 (2019).

**II**

**Discussion**

**A. Standard of Review**

When reviewing a grant of summary judgment, we must make a threshold determination as to whether a genuine dispute of material fact exists. Only where such a dispute is absent will we proceed to review determinations of law. *Johnson v. Mayor and City Council of Baltimore*, 430 Md. 368, 376 (2013); *Uninsured Employers' Fund v.*

8

*Danner*, 388 Md. 649, 658 (2005). The Commission's decision "is presumed to be prima facie correct," LE § 9-745(b)(1), but this presumption does not extend to questions of law, which we review *de novo*. *Johnson*, 430 Md. at 376-77; *Danner*, 388 Md. at 658-59.

### B. The Purpose and Pertinent Provisions of the Act

In 1914, the General Assembly passed the original version of the Act and established the Commission (originally known as the State Industrial Accident Commission). *See* 1914 Md. Laws 1429-64 (ch. 800). An independent entity of the Maryland state government, the Commission conducts proceedings and investigations relating to workers' compensation claims. *See* LE § 9-301 *et seq*. The Commission is authorized to promulgate regulations to carry out its responsibilities under the Act. *Id.* § 9-309(a).

The purpose of the Act is to protect workers and their families from hardships inflicted by accidental work-related injuries and occupational diseases. *See Gang v. Montgomery Cty.*, 464 Md. 270, 278 (2019). Under the Act, an employer or insurer is liable to pay compensation to employees covered under the Act, who suffer an accidental personal injury, or who develop an occupational disease, in the course of their employment. *See* LE, Title 9, Subtitle 6, Parts I-XI. "Compensation awarded on this fault-free basis under the statutory plan substitutes for an employee's common law right to bring a fault-based tort suit against an employer for damages resulting from the employee's injury or disablement on the job." *DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 438 (1996); *see also* LE § 9-509(b) (providing that compensation awarded to a covered employee under the Act "is in place of any right of action against any person"). The Act thus "strikes an

9

important balance between the need to provide some form of financial benefits to injured or sick employees and the need, of both employers *and* employees, to avoid expensive and unpredictable litigation over accidents in the workplace." *DeBusk*, 342 Md. at 438 (emphasis in original).

An employer or insurer is separately liable to pay death benefits to surviving dependents of employees who die as a result of a workplace injury or occupational disease. *See* LE, Title 9, Subtitle 6, Part XII. With respect to death resulting from an accidental personal injury, the employee's death must occur within seven years of the injury for a surviving dependent to receive death benefits under the Act. *Id.* § 9-501(a)(2). No similar time limit applies to death benefits where the employee dies from an occupational disease. *See id.* § 9-502(c)(2).

With respect to claims of disability or death due to occupational disease, an employer or insurer is liable to provide compensation if:

1. the occupational disease that caused the death or disability:

    i)    is due to the nature of an employment in which hazards of the occupational disease exist and the covered employee was employed before the date of disablement; or

    ii)   has manifestations that are consistent with those known to result from exposure to a biological, chemical, or physical agent that is attributable to the type of employment in which the covered employee was employed before the date of disablement; and

2. on the weight of the evidence, it reasonably may be concluded that the occupational disease was incurred as a result of the employment of the covered employee.

*Id.* § 9-502(d).[1]

The Act requires employers or insurers to provide various types of compensatory benefits to employees during their lifetimes who are injured or who develop occupational diseases, depending on the level of disability: temporary partial disability benefits, temporary total disability benefits, permanent partial disability benefits, or permanent total disability benefits. *See id.*, Subtitle 6, Parts II–V. The amount of benefits to be paid generally bears a mathematical relationship to the average weekly wage of the employee, as determined by the Commission. *See id.* §§ 9-615, 9-621, 9-626–9-630 & 9-637. An employer or insurer also is required to provide medical benefits to an employee who sustains a workplace injury or who develops an occupational disease. *See id.* §§ 9-660 & 9-661.

The Act includes "Survival of Compensation" provisions with respect to permanent partial disability and permanent total disability payments. *Id.* §§ 9-632 & 9-640. If, while still receiving disability benefits, a permanently disabled employee dies of a cause that is not compensable under the Act – meaning, a cause that is unrelated to the employee's accidental injury or occupational disease – then the right to receive those benefits "survives to the surviving dependents" of the employee. *Id.* §§ 9-632(c) & 9-640(c). The Commission has promulgated a regulation requiring that, if a surviving dependent seeks to recover unpaid disability benefits due to an employee under a claim the employee filed in his or

---

[1] As stated above, a presumption of compensability applies to a firefighter's claim of occupational disease based on heart disease or hypertension. *Id.* § 9-503(a).

11

her lifetime, the surviving dependent must submit an "Issue Form in the same claim." COMAR 14.09.02.06(A).

If an employee who is still receiving disability benefits dies as a result of the compensable injury or occupational disease, then the surviving dependents are not entitled to receive the remainder of those disability payments. However, in that circumstance (or regardless of whether the employee was receiving disability benefits at the time of death), a surviving dependent may assert a claim for death benefits under Part XII of Subtitle 6 of the Act. *See* LE § 9-678 *et seq.*[2] The amount and duration of death benefits due to a surviving dependent is based on the level of dependency, the average weekly wage of the deceased employee at the time of the workplace injury or last injurious exposure to the hazards of the occupational disease, and other enumerated factors. *See id.* §§ 9-680, 9-681, 9-682 & 9-683.3. The Commission determines the level of dependency based on the facts that existed at the time of the occurrence of the accidental injury, or on the date of the employee's disablement from the occupational disease. *Id.* § 9-679(b).

To initiate a claim for death benefits, a surviving dependent of the deceased employee does not file anything under the decedent's prior claim for disability benefits, but rather must file a new "dependent death benefits claim form" with the Commission. COMAR 14.09.02.04(B).

Settlement of claims under the Act is governed by LE § 9-722, which provides:

---

[2]     As noted above, an exception to this statutory entitlement to death benefits exists where an employee dies as a result of an accidental injury more than seven years after the injury. *Id.* § 9-501(a)(2)(ii).

12

> Subject to approval by the Commission under subsection (c) of this section, after a claim has been filed by a covered employee or the dependents of a covered employee, the covered employee or dependents may enter into an agreement for the final compromise and settlement of any current or future claim under this title with:
>
>> (1) the employer; [and/or]
>> (2) the insurer of the employer
>> ….

*Id.* § 9-722(a). The settlement agreement "shall contain the terms and conditions that the Commission considers proper," *id.* § 9-722(b), and the agreement "may not take effect unless it has been approved by the Commission." *Id.* § 9-722(c). "When approved by the Commission, a final compromise and settlement agreement is binding on all of the parties to the agreement." *Id.* § 9-722(d)(1).

The Act is remedial legislation. Therefore, courts construe it "as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Johnson*, 430 Md. at 377.

## C. The Release Does Not Bar Mrs. Collins's Claim for Death Benefits.

Mrs. Collins and Petitioners correctly observe that there is no material factual dispute that prevents us from determining, as a matter of law, whether the Release bars Mrs. Collins's claim for death benefits. That determination will require us to interpret pertinent provisions of the Act.

The cardinal rule of statutory interpretation is to ascertain and effectuate the actual intent of the General Assembly in enacting the law under consideration. *Lockshin v. Semsker*, 412 Md. 257, 274 (2010). "If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent

13

ends ordinarily and we apply the statute as written, without resort to other rules of construction." *Id.* at 275. However, we do not analyze statutory language in a vacuum. *Id.* Rather, statutory language "must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *Id.* at 276; *see Comptroller of Treasury v. Phillips*, 384 Md. 583, 591 (2005). We presume that the General Assembly intends its enactments to work together "as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Lockshin*, 412 Md. at 276; *see also Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 302-03 (2001) ("[W]hen interpreting any statute, the statute as a whole must be construed, interpreting each provision of the statute in the context of the entire statutory scheme.").

1. The Intended Scope of the Release

Before we address Mrs. Collins's and Petitioners' competing interpretations of the Act, we note that they also differ in their interpretations of the Release. On Petitioners' reading of the Release, Mr. Collins agreed that, in exchange for the payments Petitioners would provide to him, neither Mr. Collins nor Mrs. Collins would ever assert any additional claims against Petitioners relating to Mr. Collins's heart disease and hypertension, including a claim for death benefits. Petitioners contend that Mr. Collins unambiguously evinced his intent to release Mrs. Collins's potential death benefits claim by agreeing, on behalf of his "dependents," "to release and forever discharge" Petitioners "from all other

14

claims of whatsoever kind which might or could hereafter arise under the [Act] from [Mr. Collins's] disability."

Conversely, Mrs. Collins contends that the Release unambiguously evinces the parties' understanding and intent that Mrs. Collins's potential future death benefits claim was *not* being released, because the Release is "completely devoid of language as to death claims." Brief of Respondent at 12.

The Court of Special Appeals agreed with Mrs. Collins:

> Given Mr. Collins's age and medical condition, the possibility that he would die from the heart disease and hypertension he was presumed to have contracted from his work as a firefighter would have been evident to the parties to his workers' compensation case. The failure to specify that claims accruing if Mr. Collins were to die because of his compensable occupational disease were being released by him on behalf of his dependents evinces that the parties did not intend the Release to extend to those claims.

242 Md. App. at 211-12.

There is merit to both of these interpretations of the Release. On one hand, Mrs. Collins's interpretation is consistent with the provision of the Act, discussed in more detail below, which codifies the basic tenet of contracts law that a settlement is binding on the parties to the agreement. LE § 7-922(d)(1). Given this statutory provision, it seems reasonable to assume that, had the parties sought to release Mrs. Collins's potential claim for death benefits: (1) they would have included Mrs. Collins in the settlement negotiations; (2) if Mrs. Collins had been satisfied with the outcome of the negotiations, she would have signed the Agreement as a party; and (3) the Agreement would have provided some consideration to Mrs. Collins in exchange for her release of claims against Petitioners. Alternatively, as the Court of Special Appeals reasoned, if the parties intended the scope

15

of the Release to include Mrs. Collins's inchoate claim for death benefits but did not believe that Mrs. Collins needed to sign the Agreement in order to be bound by the Release, they would have explicitly referenced a potential claim for death benefits, especially given the foreseeability of Mr. Collins's death from his occupational disease. In addition, in the Claimant's Affidavit provided to the Commission simultaneously with the Agreement, Mr. Collins recited a number of rights he was giving up by settling his claim, but did not include in that listing a potential future claim for death benefits that Mrs. Collins otherwise might be able to assert. This omission provides further support for Mrs. Collins's argument that Mr. Collins did not intend to release Mrs. Collins's potential claim for death benefits.

On the other hand, the language of the Release is, undeniably, very broad. The inclusion of "dependents" in a general release of "all other claims of whatsoever kind … which could hereafter arise" from Mr. Collins's disability can reasonably be interpreted to cover Mrs. Collins's inchoate death benefits claim.

In short, we believe the Release is ambiguous as to whether Mr. Collins is releasing his dependents' future claims for death benefits. Although we therefore could construe the ambiguous language in the Release "most strongly against" Petitioners as the drafters of the Agreement, *see Credible Behavioral Health, Inc. v. Johnson*, 466 Md. 380, 399-400 (2019); *Kelley Const. Co. v. Washington Suburban Sanitary Comm'n*, 247 Md. 241, 250 (1967), we need not do so to resolve this case. Rather, we will assume for purposes of the remainder of this Opinion that, in settling his workers' compensation claim, Mr. Collins intended to release a future claim for death benefits that Mrs. Collins otherwise might bring under the Act if he were to die as a result of his heart disease/hypertension.

16

2. <u>Petitioners Cannot Enforce the Release Against Mrs. Collins.</u>

Petitioners contend that the Court of Special Appeals erred in holding that the Release is not enforceable against Mrs. Collins. They argue that § 9-722(a) "explicitly permits claimants to release *future* claims stemming from the current injury claim and it explicitly permits the Commission authority to approve such agreements if it otherwise considers the agreement acceptable." Brief of Petitioners at 9 (emphasis in the original).

Mrs. Collins responds that § 9-722(a) does not allow either an employee or a dependent to settle a death benefits claim prior to the death of the employee. Alternatively, Mrs. Collins argues that employees do not have the authority to release their dependents' independent claims for death benefits. Mrs. Collins further contends that the Commission's approval of an employee's unilateral release of a dependent's death benefits claim has no effect, because § 9-722(d)(1) renders a settlement agreement unenforceable against any person who is not a party to the agreement.

We resolve the parties' conflicting interpretations of § 9-722 by holding that: (a) dependents may settle their future claims for death benefits; (b) an employee lacks the power to release his or her dependents' independent claims for death benefits; and (c) the Commission's approval of a settlement agreement that purports to release dependents' claims for death benefits does not render the release enforceable against a dependent who is not a party to the agreement.

*a. Dependents May Settle Their Future Claims for Death Benefits.*

We hold that the Act permits dependents to release future death benefits claims while the employees upon whom they depend are still alive. Dependents may release such

17

claims either as part of a global settlement also resolving the claims of an employee under the Act, or in a separate agreement submitted to the Commission after an employee files a claim for benefits resulting from a compensable injury or occupational disease.

Section 9-722(a) provides that, "after a claim has been filed by a covered employee or the dependents of a covered employee, the covered employee or dependents may enter into an agreement for the final compromise and settlement of any current or future claim under this title with … the employer; [and/or] … the insurer of the employer." Mrs. Collins interprets this language to mean that dependents may settle death benefits claims only after they have filed such claims with the Commission. In support of her interpretation, Mrs. Collins notes that a Commission regulation provides: "When the settlement arises in connection with a claim involving a surviving dependent, the agreement submitted to the Commission for approval … shall contain … [a] statement setting forth in factual detail the position of the parties on each issue involved in the claim" and requires that the parties also provide "[t]he certificate of death of the deceased employee" as well as "[t]he certificate of marriage for the dependent and deceased employee, if the dependent is the surviving spouse of the employee." COMAR 14.09.10.02(C)(2). Mrs. Collins reads this regulation as "presum[ing] that a settlement of a dependent's claim for death benefits arises in the context of a claim brought by the dependent *after* the injured worker's death, not in the context of the worker's claim for disability benefits that accrued or is settled *during his lifetime*." Brief of Respondent at 15 (emphasis in original). Thus, according to Mrs. Collins:

> L&E § 9-722, read together with the COMAR regulations, means that after a worker files a claim for disability, medical and/or vocational rehabilitation benefits, he or she may enter into an agreement to settle *that*

18

claim, subject to approval by the Commission. In doing so, the injured worker may settle *his/her own future claims* arising from a worsening of his/her condition *and* may release the employer/insurer from a potential claim for benefits ("survivor benefits") *that derive* from that claim-those due and owing at the time of his/her death.

Likewise, after a surviving dependent of a deceased covered worker files a claim for *death benefits*, he/she may independently settle *that* separate death claim with the deceased worker's employer or insurer.

Brief of Respondent at 15 (emphasis in original).

Although § 9-722(a) provides that "a claim" must have been "filed by a covered employee or the dependents of a covered employee" before the employee or the dependents may enter into a settlement with respect to "any current or future claim," the statute does not say that dependents may only settle claims that they have already filed. While the language of § 9-722(a) is not crystal clear, we believe the better reading of this provision is that, once *any* claim has been filed under the Act based on an employee's accidental personal injury or occupational disease – either by the employee or by a dependent after the employee's death – a dependent may settle his or her current or future claim based on the employee's injury or disease. We adopt this interpretation of § 9-722(a) for several reasons.

First, our interpretation gives full effect to the word "future" in § 9-722(a), where the General Assembly has stated that a "covered employee or dependents may enter into an agreement for the final compromise and settlement of any current *or future* claim under this title." LE § 9-722(a) (emphasis added). Significantly, this language does not distinguish between the ability of employees and dependents to settle future claims. However, under Mrs. Collins's interpretation, as stated in the passage from her brief quoted

19

above, while an "injured worker may settle *his/her own future claims*," a dependent may only settle a *current* claim ("after a surviving dependent of a deceased covered worker files a claim for *death benefits*, he/she may independently settle *that* separate death claim"). Brief of Respondent at 15 (emphasis in original).

Second, we find it significant that § 9-722(a) refers to "dependents," not "surviving dependents." If § 9-722(a) only allowed a "surviving dependent" to enter into a settlement under the Act, Mrs. Collins's citation of COMAR 14.09.10.02(C)(2) – which refers to those instances "[w]hen settlement arises in connection with a claim involving a *surviving dependent*" (emphasis added) – would be more persuasive. The General Assembly refers to "surviving dependents" in various places in the Act where it addresses a specific situation involving the status of a dependent after the death of the employee upon whom he or she was dependent. *See, e.g.*, LE §§ 9-632, 9-640, 9-646 & 9-685. In contrast, in § 9-722(a) and other places in the Act, the General Assembly refers only to "dependents" or "dependency," signifying that the death of the employee is not necessarily germane to the particular situation being addressed in that provision. *See, e.g.*, *id.* § 9-679 (providing that determination of partial or total "dependency" is to be made based on facts that exist at the time of injury or disablement).

If the General Assembly, in enacting § 9-722(a), had intended to prohibit dependents from settling future claims for death benefits, it presumably would have referred only to "surviving dependents," or expressly would have limited dependents to settling their current claims, instead of permitting them to settle "any current or future claim."

20

Third, our interpretation is consistent with the language the General Assembly used when it enacted the language from which the current version of § 9-722 derives. In 1957, the General Assembly passed House Bill 937, which, among other changes to the Act, added a provision explicitly allowing employees and/or dependents to settle their current or future claims "[a]t any time after" an employee has filed a claim for compensation, and making such settlements binding on "all parties" to such agreements:

> At any time after a claim for compensation under this Article has been filed with the … Commission by any claimant, the said claimant and/or his or her dependents may, with the approval of the Commission, enter into an agreement with the employer or insurer of such employer providing for a final compromise and settlement of any and all claims which the said employee or his or her dependents might then or thereafter have under the provisions of this Article, upon such terms and conditions as the Commission shall, in its discretion, deem proper. Any such settlement when approved by the Commission shall be binding upon all parties thereto, and no such settlement shall be effective unless approved by the Commission. Upon death, any balance payable under such final compromise and settlement shall be an asset in the hands of the personal representative of the deceased party to such final compromise and settlement.

1957 Md. Laws 1507 (ch. 814). This provision was codified at Article 101, § 53, of the Maryland Code. The language of the first sentence of this provision unambiguously allowed dependents to settle "any and all claims" they "might then or thereafter have" (which would include future claims for death benefits) at "any time after" an employee filed a claim for compensation under the Act. Thus, the General Assembly, in enacting the predecessor of § 9-722(a), permitted an employee's dependents to settle their future death benefits claims while the employee was alive.

In 1991, when the General Assembly repealed Article 101 and recodified the Act as Subtitle 9 of the new Labor and Employment Article, it divided former § 53 of Article 101

into the five lettered subsections that exist today in § 9-722. 1991 Md. Laws 946-47 (ch. 8). At that time, the General Assembly also changed the language in then-new subsection (a) to its current form ("after a claim has been filed by a covered employee or the dependents of a covered employee, the covered employee or dependents may enter into an agreement for the final compromise and settlement of any current or future claim"). However, there is no indication that, in making this change, the General Assembly intended to eliminate the ability of a dependent to settle a future death benefits claim. To the contrary, a Revisor's Note stated that § 9-722 "is new language derived without substantive change from former Art. 101, § 52."[3] 1991 Md. Laws 947.[4] Thus, the General Assembly's provision in § 9-722(a) allowing dependents to settle "any current or future claim" reflects the General Assembly's original and unchanged intent to allow dependents to settle any and all of their claims, including potential death benefits claims, at any time after an employee upon whom they depend has filed a claim for compensation.

Fourth, our construction is consistent with the strong public policy to encourage settlement. *See, e.g.*, *Long v. State*, 371 Md. 72, 84-85 (2002) (discussing "the public policy dictating that courts should look with favor upon the compromise or settlement of law suits in the interest of efficiency and economical administration of justice and the

---

[3]    It appears the reference to § 52 was a typographical error. The predecessor to LE § 9-722 was codified at § 53 of Article 101.

[4]    The only comment in the Revisor's Note specifically pertaining to § 9-722(a) explained that "[i]n the introductory language of subsection (a) of this section, the words 'current or future claim' are substituted for the former words 'claims … employee … might then or thereafter have', for brevity." 1991 Md. Laws 947.

22

lessening of friction and acrimony") (internal quotation marks and citations omitted). In that regard, we note that employers and insurers are able to identify an employee's "dependents" prior to the death of the employee. While nobody knows for sure who an employee's "surviving dependents" are until the employee dies, it is possible for employers and insurers to determine who the employee's "dependents" are after an employee files a claim for benefits. *See Outten Bros., Inc. v. Dunn*, 232 Md. 590, 594 (1963) ("Questions of dependency are determined under facts existing at the time of the injury which proved fatal."); LE § 9-679(b). Employers and insurers then can negotiate with those dependents, if there is mutual interest in settling future death benefit claims.

Finally, as discussed below, the General Assembly has made settlement agreements binding only on parties to such agreements. *Id.* § 9-722(d)(1). If, as Mrs. Collins argues, a dependent cannot release his or her potential death benefits claims as part of a global settlement involving an employee's claims under the Act, employers/insurers might insist on the need to reduce settlement offers to employees based on the risk that their dependents subsequently will submit claims for death benefits. We find it difficult to imagine that the General Assembly intended to encourage employers and insurers to offer smaller settlements to injured and sick employees when it enacted §§ 9-722(a) and (d)(1). Rather, we believe that, as was the case with the predecessor version of § 9-722, the current version of that statutory section allows employees *and* their dependents to have seats at the negotiating table with employers and insurers, and thereby provides all interested parties with the opportunity to arrive at full and final settlements of their current and future claims, based on the facts and circumstances of each case.

23

### b. An Employee May Not Release His or Her Dependent's Independent Claim for Death Benefits.

Although we have rejected Mrs. Collins's argument that *neither* an employee nor a dependent may settle a death benefits claim prior to the death of the employee in question, it does not follow that *either* an employee or a dependent may release a death benefits claim. While dependents may release their current or future claims for death benefits under the Act, employees do not have the power to release their dependents' independent claims for death benefits.

As discussed above, the Act provides that a settlement agreement approved by the Commission "is binding on all of the parties to the agreement." LE § 9-722(d)(1). Thus, we believe it is clear that, in enacting § 9-722(d)(1), the General Assembly has expressed its intent that a final compromise and settlement under the Act shall *not* be binding on *non-parties* to the agreement. Petitioners offer no alternative interpretation of § 9-722(d)(1). And for good reason: this legislative scheme is consistent with the elementary proposition of the law of contracts that "a contract cannot be enforced by or against a person who is not a party to it." *Crane Ice Cream Co. v. Terminal Freezing & Heating Co.*, 147 Md. 588, 593 (1925); *see also Homeseekers' Realty Co. v. Silent Automatic Sales Corp.*, 163 Md. 541, 545 (1933) (contract is binding "only upon the parties to the contract and their privies"); *Waffle House*, 534 U.S. at 294 ("It goes without saying that a contract cannot bind a nonparty."); *Bacon v. City of Richmond,* 475 F.3d 633, 643 (4th Cir. 2007) ("[S]ettlement agreements are not to be used as a device by which A and B, the parties to the decree, can (just because a judge is willing to give the parties' deal a judicial

24

imprimatur) take away the legal rights of C, a nonparty.") (internal quotation marks and citation omitted). It follows that an employee may not unilaterally release his or her dependents' claims for death benefits. Thus, Mr. Collins's purported release of Mrs. Collins's future death benefits claim is unenforceable.

This does not mean that Mrs. Collins could have sought additional benefits under Mr. Collins's original claim, on the ground that she was not a party to the Agreement. Mr. Collins was permitted to release all current and future claims by himself or anyone else with respect to benefits to which *he* was entitled, and he did so through the Release. Thus, if Mrs. Collins had filed an "Issue Form" in Mr. Collins's claim (number B760589), seeking, for example, posthumous permanent partial disability benefits, *see, e.g.*, *Sears, Roebuck & Co., Inc. v. Ralph*, 340 Md. 304 (1995) (permitting wife of deceased employee to proceed on claim for posthumous permanent partial disability benefits based on medical opinions the employee received before he died), Petitioners would have had a valid defense based on the Release. Likewise, if Mr. Collins hypothetically had been killed in a car accident, as opposed to dying as a result of his compensable disease, and Mrs. Collins had sought to recover any unpaid benefits to which Mr. Collins would have been entitled had he lived, Petitioners could have enforced Mr. Collins's release of such a claim against Mrs. Collins.[5]

---

[5]   While a dependent who is a party to a settlement agreement may release both a future claim for unpaid disability benefits and a future claim for death benefits, an employee may also unilaterally release the former type of claim, but not the latter. In other words, in order for a release of a death benefits claim to be enforceable against a dependent, the dependent must be a party to the settlement agreement containing the release. In contrast, a knowing and voluntary release by an employee of all future claims by his or her

Contrary to these hypothetical scenarios involving survivorship of Mr. Collins's benefits, Mrs. Collins here is seeking death benefits that Mr. Collins himself – for obvious reasons – never could have claimed or received directly. Thus, in keeping with the Commission's regulations, Mrs. Collins filed a separate claim for death benefits under a new claim number. *See* COMAR 14.09.02.04(B).

Therefore, Petitioners are incorrect when they assert that Mr. Collins's attempt to release Mrs. Collins's potential claim for death benefits was "a lawful exercise of his right to waive the claims of *his heirs*." Brief of Petitioners at 10 (emphasis added). Mrs. Collins did not inherit her claim for death benefits as Mr. Collins's heir. To the contrary, as discussed in detail below, Mrs. Collins's claim for death benefits is created by the Act and is independent of Mr. Collins's prior claim for disability benefits. Because Mr. Collins never could assert a claim for death benefits himself, it was not his prerogative to release such a claim. Only Mrs. Collins could release her claim to death benefits by personally entering into a settlement agreement with Petitioners that was subsequently approved by the Commission. She did not do so.

---

dependents for unpaid disability benefits is enforceable against the dependents, whether or not they also join in the release as parties to a settlement agreement. This is the case because, as discussed below, a claim for unpaid disability benefits, unlike a claim for death benefits, derives from the employee's claim for disability benefits.

*c. The Commission's Approval of a Settlement Agreement That Purports to Release Dependents' Future Claims for Death Benefits Does Not Render the Release Enforceable Against a Dependent Who Is Not a Party to the Agreement.*

Notwithstanding § 9-722(d)(1), Petitioners contend that Mrs. Collins's absence as a party to the Agreement is immaterial because the Commission approved the Agreement in its entirety, including Mr. Collins's release of Mrs. Collins's future claim for death benefits. We disagree.

First, although we are assuming for the sake of assessing the parties' legal arguments before us that Mr. Collins intended to release a future claim for death benefits that Mrs. Collins otherwise might one day file, we do not assume that the Commission read the Release that way prior to its approval of the Agreement. As discussed above, the language of the Release is ambiguous on this point, and Mr. Collins's Claimant's Affidavit does not list Mrs. Collins's right to file a claim for death benefits among the rights he is giving up by settling his claim. Moreover, nothing in the record suggests that, prior to approving the Agreement, the Commission considered whether the scope of the Release included future claims for death benefits. The June 4, 2015 Order of the Commission approving the Agreement is silent on this point.

Second, even if we assume that the Commission understood Mr. Collins to be releasing his dependents' future death benefits claims at the time the Commission approved the settlement, we cannot simply assume away § 9-722(d)(1), which renders the Release unenforceable against Mrs. Collins because she was not a party to the Agreement.

27

Recognizing that contracts typically are not enforced against non-parties, Petitioners assert that "the Legislature did not intend the Commission to be bound by the normal strictures of contract law when reviewing settlements." Brief of Petitioners at 8. In this regard, Petitioners cite *B. Frank Joy Co. v. Isaac*, 333 Md. 628 (1994). However, Petitioners' reliance on *Isaac* is misplaced.

In *Isaac*, a claimant (Mr. Isaac), his employer (Joy), and Joy's insurer (Zurich) entered into an agreement to settle Mr. Isaac's workers' compensation claim for an accidental workplace injury. Under that agreement, Joy and Zurich agreed to pay Mr. Isaac a lump sum and an annuity in exchange for a release of all claims. The parties submitted the settlement agreement to the Commission and a hearing was set. Eight days before the hearing, Mr. Isaac died of causes unrelated to his claim for compensation. Joy and Zurich then sought unilaterally to rescind the agreement. After the hearing, the Commission approved the agreement and ordered Joy and Zurich to comply with its terms. *Id.* at 635-38.

On appeal, Joy and Zurich argued that Commission approval was a condition precedent to the formation of a settlement agreement. Thus, Joy and Zurich claimed, because they gave notice of their intent to rescind the agreement before the condition precedent was satisfied, the Commission lacked authority to approve the agreement and thereby form the settlement agreement over their objection. *Id.* at 640-41. This Court rejected Joy's and Zurich's attempt to repudiate the agreement. The Court concluded that the General Assembly intended to vest discretion in the Commission to consider all proposed agreements once they are submitted by the parties under the terms of the Act. To

28

the extent, in that situation, the General Assembly intended a different rule to apply than normally would be the case under the law of contracts, this Court held that the legislative intent controlled. *See id.* at 647-48.

Here, unlike *Isaac*, the General Assembly's intent does not diverge from, but rather conforms with, the law of contracts by making approved settlements binding only on the parties to such settlements. The Commission does not have discretion to bind a non-party to a settlement under the Act in contravention of the General Assembly's longstanding statutory directive that only those who are parties will be bound to settlement agreements.[6]

Finally, Petitioners' argument runs contrary to the well-settled requirement that we interpret the Act as broadly as possible in favor of claimants. *See Gang*, 464 Md. at 279 ("The Act is remedial in nature and should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant.") (internal quotation marks and citations omitted); *Johnson*, 430 Md. at 377 (same). An interpretation of the Act that allows the Commission to approve an employee's unilateral decision to release a dependent's future death benefits claim would undermine the General Assembly's "benevolent purpose" to protect dependents. *See Isaac*, 333 Md. at 635 ("We have construed [the Act's] provisions as liberally as possible in favor of injured employees *and*

---

[6]    As noted above, in its 1957 enactment of the predecessor to § 9-722, the General Assembly gave the Commission authority to approve agreements settling dependents' future claims, and at the same time provided that such agreements would be "binding on all parties thereto." Md. Code Ann., Art. 101, § 53 (1957 Cumulative Supp.).

*their families*, in compliance with the Legislative command to interpret the Act in ways that effectuate its general purpose.") (internal quotation marks and citation omitted) (emphasis added). Rather than construe the Act in a way that could pit employees and their dependents against each other, we opt for an interpretation that respects the independent rights of employees, as well as dependents, under the Act.

In sum, § 9-722, read in its entirety, allows for the settlement and release of a potential future claim for death benefits a dependent might otherwise have under the Act, but permits only the dependent to release such a claim. The Commission does not have the discretion to make a purported release of a death benefits claim enforceable against a dependent who is not a party to a settlement agreement. Because Mrs. Collins was not a party to the Agreement between Mr. Collins and Petitioners, Petitioners may not enforce the terms of the Release against Mrs. Collins.[7]

---

[7] In an alternative effort to harmonize their position with § 9-722(d)(1), Petitioners assert that the Commission was "satisfied that Mrs. Collins joined in the [Release], when they accepted argument and, after considering the case, disallowed her dependency claim." Brief of Petitioners at 18. However, nothing in the record suggests that Mrs. Collins "joined" in the release of her future claim for death benefits. She was not a party to the Agreement, and there is no evidence that she was aware of, let alone participated in, the negotiations that culminated in the execution of the Agreement in May 2015. Nor is there any record support for Petitioners' contention that the Commission denied Mrs. Collins's claim in 2017 because the Commission concluded Mrs. Collins had "joined in" the Release. The Commissioner who presided over the September 2017 hearing made no such finding when the parties were before her. Nor did the Commission make such a finding in its subsequent order denying Mrs. Collins's claim.

3. The Settlement of Mr. Collins's Disability Claim Did Not Extinguish Mrs. Collins's Potential Claim for Death Benefits.

Petitioners alternatively argue that it is immaterial whether the Release can be enforced against Mrs. Collins, contending that Mr. Collins's settlement of his disability claim extinguished Mrs. Collins's claim for death benefits before Mrs. Collins filed her claim. We again disagree.

The fundamental problem with Petitioners' argument is that a dependent's claim for death benefits does not derive from the deceased employee's claim for disability benefits. Rather, as this Court held almost a century ago, a dependent's claim for death benefits is independent of the deceased employee's claim for compensation, and belongs only to the dependent. *Sea Gull Specialty Co. v. Snyder*, 151 Md. 78 (1926).

In *Sea Gull,* the employee, Mr. Snyder, suffered a workplace injury and sought compensation. He eventually received an award of temporary total disability benefits under which his employer and its insurer paid him $18 per week for 87 weeks, for a total of $1,566. Approximately one year after Mr. Snyder received the last of those payments, Mr. Snyder died from his injury, after which his widow filed a claim for death benefits and received an award of $5,000. The employer and insurer objected to the amount of the death benefit, claiming that it should be reduced by the $1,566 they previously paid to Mr. Snyder as compensation for the same injury. *Id.* at 81.

This Court rejected the employer/insurer's interpretation of the Act, and held that Mrs. Snyder was entitled to the full amount of statutorily prescribed death benefits, without any reduction to account for disability benefits Mr. Snyder had received while he was alive.

31

*Id.* at 85-87. The Court reached this decision based on its recognition that the Act "created two separate and distinct classes of persons to whom compensation might be awarded; first, the injured employee; and, second, in case of his death …, his dependents." *Id.* at 84. Thus, while

> [t]he right to an award of compensation in each of these cases arises out of the same compensable injury, … the class of compensation awarded the injured employee and that awarded his dependents in case of his death, are separate and independent of each other. If the employee is awarded compensation for an injury, and afterwards … dies, the injury preceding the death, and the death, arose out of one and the same injury. Compensation for the death is payable to and belongs to the dependent, while compensation awarded to the living employee is payable and belongs to him. Our statute provides, upon a certain state of facts, that an injured employee is entitled to compensation in varying amounts; and it also provides, under a certain other entirely different and distinct set of facts, that the dependents of a deceased employee are entitled to compensation in varying amounts; and neither of these awards of compensation is governed by the other. In other words, the Legislature has said to the employee: "If you are injured under the conditions provided, you are entitled to the definite compensation fixed by the law." Having said this, they then say to the dependents of the deceased injured employee: "If the employee died … as a result of the injury, you dependents are entitled to compensation."

*Id.* at 84-85 (citation omitted).

Petitioners contend that "[w]hat is missing in Mr. Collins' widow's case – which was not missing in Mr. Snyder's widow's case – is the existence of a compensable injury" because Mr. Collins settled his claim for his injury before he died. Brief of Petitioners at 19. But *Sea Gull* does not stand for the proposition that an employee must not have settled his disability claim in order for his surviving dependents to have a viable claim for death benefits. Rather, *Sea Gull* establishes that, unlike a surviving dependent's right to unpaid

32

disability benefits, which necessarily derives from an employee's claim, a dependent's right to death benefits is independent, not derivative, of an employee's claim.

Based on Petitioners' logic, there should be no difference between satisfaction of an employee's claim through payment of a settlement, and satisfaction of his or her claim through payment of a judgment ordered by the Commission after a contested hearing. Thus, if Petitioners' argument had merit, the Court in *Sea Gull* would have reduced Mrs. Snyder's death benefit by the amount Mr. Snyder received in satisfaction of the judgment, or perhaps even would have held that Mrs. Snyder was entitled to *no* death benefits because the full satisfaction of Mr. Snyder's claim during his lifetime "extinguished" any potential claim for benefits Mrs. Snyder otherwise would have had based on Mr. Snyder having died as a result of the same injury. However, contrary to Petitioners' position, the Court in *Sea Gull* recognized that an employee's receipt of payment from an employer, in full satisfaction of the employee's claim for compensation for disability resulting from an occupational disease or workplace injury, does not change the fact that, as here, the employee died from the same compensable disease or injury, thereby giving rise to a dependent's independent claim for death benefits.

*Cline v. Mayor and City Council of Baltimore*, 13 Md. App. 337 (1971), *aff'd*, 266 Md. 42 (1972), another case that Petitioners cite, similarly supports Mrs. Collins's position, not that of Petitioners. Mr. Cline suffered a workplace injury and died from the injury two months later. Mrs. Cline then filed a claim for death benefits under the Act. *Id.* at 339. At the time of Mr. Cline's accident, the statutory cap on death benefits payable to a person who was wholly dependent on a deceased worker was $15,000. One day before Mr. Cline

33

died, an amendment to the death benefit provision went into effect, raising the applicable cap to $27,500. *Id.* The Court of Special Appeals considered whether the law in effect on the date of Mr. Cline's accident, or the law in effect on the date of his death, governed the amount of death benefits that Mrs. Cline was entitled to receive. *Id.* at 340.

The court held that Mrs. Cline should receive the level of death benefits in effect at the time of Mr. Cline's death, not at the time of his injury. *Id.* at 343-44. In reaching this result, the court contrasted the death benefits that Mrs. Cline was seeking with unpaid disability benefits that a dependent may claim when an employee dies of a cause that is unrelated to his or her compensable disability. In the latter case, "it is not the death which is compensable … but rather the injury, and it is the right of the [employee] … to collect the benefits unpaid from that injury at the time of … death which survives." *Id.* at 340. In the former scenario, "although the survivor's right to death benefits arises out of the compensable injury, it is the employee's death itself which is the compensable event, and the right of the surviving dependent to death benefits is separate and independent of the injured employee's rights and does not depend upon whether compensation was paid to the injured [employee] during his [or her] lifetime." *Id.* at 340-41.

It follows that, here, Mrs. Collins's right to death benefits does not depend on whether Mr. Collins received (or did not receive) compensation in settlement of his separate claim for disability benefits, notwithstanding that both claims are based on the same occupational disease.

*Di Pietro v. Mayor and City Council of Baltimore*, 179 Md. 220 (1940), and *Lord Baltimore Hotel Co. v. Doyle*, 192 Md. 507 (1949), upon which Petitioners also rely, are

34

distinguishable from this case. In *Di Pietro*, the Commission denied Mr. Di Pietro's claim, finding that he had not suffered a workplace injury or occupational disease. Mr. Di Pietro unsuccessfully appealed that determination. After he died, his widow filed a claim for death benefits under the Act. She argued that the conclusion the Commission had reached regarding her husband's claim was erroneous. 179 Md. at 221. This Court held that the determination in Mr. Di Pietro's case that he did not have a compensable injury or illness was preclusive as to Mrs. Di Pietro's claim for death benefits. *Id.* at 222-23. Here, Petitioners do not dispute that Mr. Collins had a compensable disease. Mr. Collins's settlement of his claim to benefits under the Act for that disease does not bar Mrs. Collins from establishing, as a factual matter, the existence of the same compensable disease.

Similarly, in *Doyle*, the Court held that, where the cause of the decedent's death was not due to a workplace accident he suffered, but rather was the result of complications from surgery on the day after the accident to address a pre-existing condition, his dependents were not entitled to death benefits for the workplace accident. 192 Md. at 507. The Court explained that the claims of "surviving dependents must be measured by the same tests of liability as would have been applied to the claim of the employee himself, had he survived." *Id.* at 509. The "had he survived" language applied in *Doyle* because Mr. Doyle did not file a claim for disability benefits before he died. *Doyle* is essentially the same case as *Di Pietro*, except that, unlike Mr. Di Pietro, Mr. Doyle did not live long enough after his accident to file a claim for disability benefits that would have been denied.

We disagree with Petitioners' contention that the 1913 wrongful death case of *State ex rel. Melitch v. United Rys. & Electric Co. of Baltimore*, 121 Md. 457 (1913), has any

35

application here. Although a wrongful death action is similar to a claim for death benefits under the Act, in that the wrongful death action is also a "new and independent cause of action, distinguishable from a decedent's own … action during his lifetime," *Spangler v. McQuitty*, 449 Md. 33, 54 (2016), the statutes governing these two claims differ in significant respects. First, the wrongful death statute, unlike the workers' compensation statutory scheme, is not a remedial law that must be construed as liberally as possible in favor of those who bring suit under it. To the contrary, the wrongful death law, like other "statutes in derogation of the common law," is to be "strictly construed, and it is not to be presumed that the General Assembly … intended to make any alteration in the common law other than what has been specified and plainly pronounced." *Id.* at 50 (citation omitted) (cleaned up).

Second, Maryland's wrongful death statute has long defined a "wrongful act" as "an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued." Md. Code Ann., Cts. & Jud. Proc. § 3-901(e) (LexisNexis 1973, 2013 Repl. Vol.). Relying on the phrase "if death had not ensued," the Court in *Melitch* held that, because the decedent settled his personal injury claim against the defendant before he died, his widow could not bring a wrongful death action against the defendant. 121 Md. at 461-63. There is no similar language in the Act which even arguably suggests that a prerequisite to an award of death benefits is that the employee not have settled his or her claim for compensation based on the same workplace injury or occupational illness.

36

In addition, *Melitch* was premised on the idea that it would be unfair to subject a defendant to double recoveries – first by the tort victim during his or her lifetime, and later, by the victim's heirs after death – for the same negligent act. The Court analogized Mrs. Melitch's case to one in which a decedent had obtained a judgment against the defendant for the injury before his death, quoting such a case from Indiana:

> [I]n order that [an action under the wrongful death statute] may be maintained, the intestate must have had a right of action against the person whose wrongful act or omission caused the injury which he could have maintained had he lived, and when as in this case, the injured person has prosecuted his action for damages on account of the injury to final judgment, and the judgment has been satisfied prior to his death, he, if he had lived, could not have prosecuted an action against the person causing the injury for the same act or omission.

*Id.* at 460-61 (quoting *Hecht v. Ohio & M. Ry. Co.*, 32 N.E. 302, 304 (Ind. 1892)). Thus, the *Melitch* Court stated that a wrongful death action "is singularly inappropriate," where the decedent "in his lifetime maintained the action and actually recovered his damages." *Id.* at 462; *see also Mummert v. Alizadeh*, 435 Md. 207, 222 (2013) (explaining *Melitch*'s reliance on cases animated by concerns about double recoveries).

As discussed above, the Act does not prevent a surviving dependent from recovering death benefits where the employee has previously "recovered his [or her] damages" in the form of disability benefits. To the contrary, the Act *mandates* that an employer pay different benefits to different beneficiaries at different times if a compensable injury or disease first disables, and later kills, an employee. We see no reason to believe that the General Assembly intended to eliminate the requirement that the employer pay death benefits, where the employer or insurer previously paid compensation to an employee

37

through a settlement, as opposed to paying compensation to an employee after being found liable in a case contested before the Commission.

Moreover, the underpinnings of *Melitch* have eroded significantly in the century that has passed since the Court issued that decision. In *Spangler*, we held that notwithstanding the "if death had not ensued" language in the wrongful death statute, that law "provides a new and independent cause of action, which does not preclude a subsequent action brought by a decedent's beneficiary, although the decedent obtained a personal injury judgment based essentially on the same underlying facts during his or her lifetime." 449 Md. at 49. As *Melitch* was based in significant part on the proposition that any satisfaction of a tort victim's claim during his lifetime bars his or her heirs from recovering for the same injury, *Melitch*'s continuing viability is questionable. *See Mummert*, 435 Md. at 222 (in dicta, stating the Court's view that, "whether a release by the decedent bars a wrongful death claim by her beneficiaries depends in part on the sweep of the language of the particular release"). While we did not need to overrule *Melitch* to resolve the question presented in *Spangler*, we cited favorably the Court's dicta in *Mummert* that contradicts *Melitch*'s holding. *Spangler*, 449 Md. at 57.

In short, even if, based on *Melitch*, a settlement by a tort victim during his or her lifetime continues to extinguish the right of the victim's heirs to pursue a subsequent wrongful death case, *Melitch*'s reasoning does not apply to an independent claim for death benefits under the Act.

Our conclusion is consistent with the great weight of authority in other jurisdictions interpreting similar workers' compensation statutes, which hold that an employee's

38

settlement of his or her claim for compensation does not bar a claim for death benefits brought by a dependent if the employee later dies of the compensable injury or disease. *See, e.g.*, *Kibble v. Weeks Dredging & Constr. Co*., 735 A.2d 1142, 1146, 1152 (N.J. 1999) (observing that, "[i]n the vast majority of states, a dependent's right to seek worker's compensation death benefits is not affected by a lump-sum settlement agreement between an injured worker and that worker's employer," and holding that a dependent must "knowingly, intelligently and voluntarily waive" his or her rights to future potential death benefits in order for a settlement to preclude a future claim for such benefits); *Family Dollar v. Baytos*, 525 S.W.3d 65, 71-72 (Ky. 2017) (rejecting employer's argument that, "[b]ecause Baytos had no benefits due to him at his death because of his fully settled claim with Family Dollar, there are no benefits to which [Baytos's widow] would be entitled to spark her claim"); *Brown v. Hubert*, 122 A.2d 260, 262 (N.H. 1956) (employee's settlement of his claim based on a workplace injury "executed by him and not his dependents … could only affect his right of action," not his dependents' subsequent claim for death benefits after the employee died as a result of his injury); *Buchanan v. Kerr-McGee Corp.*, 908 P.2d 242, 245 (N.M. Ct. App. 1995) ("The claim of a dependent arising from the death of a worker is a new and separate claim and is not derivative of the worker's claim"; thus, "[a] unilateral settlement or release by a worker of his or her own claims does not bar the surviving dependent's claim even if the release signed by the worker explicitly purports to release the dependent's claim, as was the case here"); *see also* 8 Larson's Workers' Compensation Law, Desk Edition § 98.01[2] (2019) (also citing cases from Arizona, Georgia, Illinois, Indiana, Massachusetts, Minnesota, Missouri, New York, Ohio,

Pennsylvania, Rhode Island, Tennessee, and Texas, for the proposition that a release of rights by a decedent does not bar his or her dependent's claim for death benefits).[8] And, our conclusion again furthers the remedial purpose of the Act by preserving the ability of dependents to claim benefits under the independent action the General Assembly has provided for them.

## D. A Final Word About Finality

Petitioners sound the alarm that the failure to give effect to Mr. Collins's release of Mrs. Collins's future claim for death benefits will largely end the settlement of workers' compensation cases. That will be the result, according to Petitioners, because such a ruling

---

[8] Petitioners point only to Louisiana as a state that interprets its workers' compensation law as Petitioners would have us interpret the Act. *See* Brief of Petitioners at 15 & n.2 (citing *White v. Robinson Lumber Co.*, 2005-0923 (La. App. 4 Cir. 3/29/06); 929 So. 2d 231, 239). However, it is not clear that, in Louisiana, an employee's settlement of his or her workers' compensation claim automatically extinguishes a dependent's potential claim for death benefits. Rather, the courts in Louisiana appear to analyze the specific language of a release to determine whether it covers all claims that may provide compensation of any kind for the settling employee's workplace injury or occupational disease, thus suggesting that a claim for death benefits will lie in favor of a dependent unless the decedent unequivocally released his or her dependents' claims relating to the injury or disease. *Compare Bouy v. Teche Elec. Cooperative, Inc.*, 03-355 (La. App. 3 Cir. 11/26/03); 861 So. 2d 712, 714-15 (analyzing whether employee intended to release potential claim for death benefits, where employee's treatment for his workplace injury led to development of Hepatitis C, which eventually caused his death, and holding that the release did not contemplate such a claim) *with White*, 929 So. 2d at 239 (concluding that decedent intended to waive his dependents' claims for death benefits as part of his settlement); *see also Duni v. United Technologies Corp./Pratt and Whitney Aircraft Div.*, 682 A.2d 99, 102-04 (Conn. 1996) (employee, in settling his or her claim for disability compensation, may also release dependents' rights to death benefits). As discussed above, our General Assembly has made a settlement under the Act enforceable only against parties to the settlement agreement. LE § 9-722(d)(1). Thus, the Act differs from the workers' compensation laws of Louisiana and Connecticut, which allow an employee to release a dependent's future claim for death benefits.

40

will "remove[] any finality from settlement agreements for all occupational disease claims and accidental injury claims for a period of seven (7) years from the date of the accident." Brief of Petitioners at 11-12.

We are not as pessimistic as Petitioners about the prospects for settlements of workers' compensation cases going forward. Our holding, that an employee's dependents may settle their future claims for death benefits while the employee is still alive, provides the opportunity for a global settlement of employees' and dependents' claims, where appropriate. In many cases, the small likelihood of death occurring as a result of an occupational disease (e.g., carpal tunnel syndrome) or as a result of an accidental personal injury within seven years of the injury (e.g., the loss of a digit) may lead employers and insurers to conclude that it is not necessary to invite dependents into settlement discussions or to offer much additional consideration to dependents to fairly compensate them for releasing their future claims for death benefits. In other cases, the likelihood of death from the occupational disease may be deemed a substantial possibility, thereby justifying a significant payment to a dependent in exchange for the dependent's release during the employee's lifetime of a potential claim for death benefits. We have confidence that employers/insurers, as well as dependents with the assistance of counsel as appropriate, will be able to effectively assess the value of inchoate claims for death benefits in light of each case's unique circumstances.

At oral argument, counsel for Petitioners represented that the Release contains standard language that parties to settlements under the Act have used in thousands of cases over at least the past several decades. Mrs. Collins's counsel did not dispute that assertion.

41

However, he stated that, in assisting injured and sick employees in settling their claims under the Act, he has never understood his employee clients to be releasing not just their own future claims for additional benefits, but also their dependents' claims for future death benefits. Given the parties' differing interpretations of the pertinent release language, we suspect that the plaintiffs' bar and the defense bar in workers' compensation cases have each seen what they have wanted to see in this language. These differing interpretations have gone untested for many years, presumably because the scenario presented by this case – where an employee lives long enough following disablement to settle his or her workers' compensation claim, and then dies as a result of the same compensable injury or illness, leading a surviving dependent to file a claim for death benefits – is rare. The fact that the issue presented in this case is one of first impression in the 106-year history of the Act seems telling. This case has brought to the surface the difference of opinion concerning the meaning of the operative release language. We believe our ruling today will help ensure that, going forward, there is a true meeting of the minds regarding the scope of releases in workers' compensation cases.

### III

### Conclusion

Mrs. Collins was not a party to the settlement agreement between Mr. Collins and Petitioners. Thus, Petitioners may not enforce the Release against Mrs. Collins. In addition, Mr. Collins's settlement of his claims under the Act did not extinguish Mrs. Collins's future claim for death benefits. For these reasons, the Court of Special Appeals correctly ordered the case remanded to the circuit court for entry of judgment on behalf of Mrs. Collins, and

with instructions to remand the case to the Commission for further proceedings on Mrs.

Collins's claim for death benefits.

Accordingly, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.**